IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-cv-00690-MSK

CLINTON T. ELDRIDGE,

    Applicant,

v.

J. OLIVER, Warden, and
U.S. PAROLE COMMISSION,

    Respondents.

# ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1) filed *pro se* by Applicant Clinton T. Eldridge, an inmate at the United States Penitentiary, Administrative Maximum, in Florence, Colorado. Applicant challenges the denial of his parole in 2010, 2013, and 2016. Respondents filed a Response (ECF No. 28), and Applicant filed an "Answer to Respondent's Response to Writ of Habeas Corpus" (ECF No. 29) ("Reply"). Applicant also filed "Petitioner's Request the Court to Grant Permission to Supplement the Record" (ECF No. 30), "Motion for Leave to File a Clarification on the Issue of 'Sex Offender Treatment Program'" (ECF No. 39), "Motion to Supplement the Record" (ECF No. 44), and "Emergency Motion for a Show Cause Order to Respondents" (ECF No. 49).

Because Applicant is proceeding *pro se*, the Court must construe his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). The Court, however, cannot act as advocate for a *pro se* litigant. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court

has determined that it can resolve the Application without a hearing. 28 U.S.C. § 2243; *see also Jeter v. Keohane,* 739 F.2d 257 n.1 (7th Cir. 1984) ("An evidentiary hearing is not necessary when the facts essential to consideration of the constitutional issue are already before the court."). Upon careful review of the materials supplied by the parties, the Court finds that the Application should be DENIED and the case DISMISSED for the reasons discussed below.

## I. BACKGROUND

In 1984, Applicant was convicted of eight felony counts, including rape and robbery, and was sentenced by the District of Columbia Superior Court to consecutive prison terms totaling 40 to 120 years. (ECF No. 28-2 at 1). Although Applicant was sentenced by a D.C. court under the D.C. Code, he was transferred to the custody of the United States Bureau of Prisons ("BOP") to serve his sentence pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"). *See* D.C. Code § 24-101. The Revitalization Act also transferred paroling authority from the District of Columbia Board of Parole ("Board") to the United States Parole Commission ("Commission"). *See* D.C. Code § 24-131. Applicant became eligible to be considered for parole on November 9, 2010. (ECF No. 28-2 at 2).

In this action, Applicant challenges the Commission's decisions denying him parole in 2010 ("claim one"), 2013 ("claim two"), and 2016 ("claim three"). Construing his allegations liberally, Applicant raises four claims:

2

- the Commission incorrectly applied parole guidelines concerning his positive program achievements;

- the Commission erred in denying parole based on Applicant's failure to participate in sex offender treatment that had not been recommended earlier or made available to him and is not required under parole guidelines;

- the Commission incorrectly relied on 18 U.S.C. § 4042; and

- Applicant was denied the right to administrative appeals.

(ECF No. 1 at 2-16).

As relief, Applicant seeks a parole rehearing or his release on parole. (*Id.* at 5).

## II. STANDARD OF REVIEW

A habeas proceeding under 28 U.S.C. § 2241 is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). Judicial review of the Commission's parole decision is narrow. *See Peltier v. Booker,* 348 F.3d 888, 892 (10th Cir. 2003). The appropriate standard of review "is whether the decision is arbitrary and capricious or is an abuse of discretion." *Dye v. U.S. Parole Comm'n*, 558 F.2d 1376, 1378 (10th Cir. 1977) (per curiam); *see also Gometz v. U.S. Parole Comm'n,* 294 F.3d 1256, 1260 (10th Cir. 2002) ("We will not disturb a decision by the Parole Commission 'unless there is a clear showing of arbitrary and capricious action or an abuse of discretion'") (internal citation omitted). "The inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." *Gometz,* 294 F.3d at 1260 (internal citation and quotation marks omitted). The Court does "not reweigh evidence, make credibility determinations, or substitute [its] judgment for the Commission's." *Id.* Moreover, "it is not the

function of courts to review the [Commission's] discretion in denying parole or to repass on the credibility of reports received by the [Commission] in making its determination." *Dye,* 558 F.2d at 1378.

### III. PAROLE REGULATIONS AND GUIDELINES

At the time of Applicant's offenses, parole eligibility for prisoners sentenced under the D.C. Code was determined by the Board pursuant to regulations issued in 1972 ("the 1972 Regulations"). *See Daniel v. Fulwood,* 766 F.3d 57, 58 (D.C. Cir. 2014) (providing historical overview of parole regulations and guidelines for D.C. Code offenders). Under the 1972 Regulations a prisoner became eligible for parole after serving the minimum sentence imposed by the sentencing court. *Id.* Once eligible for parole, the Board would then determine whether the prisoner was suitable for parole by considering a set of factors that included, "'[a]mong others,' the nature of the prisoner's offense, his prior criminal history, his personal and social history, and his institutional experience (including behavior in prison, involvement in academic and vocational programs, etc.)." *Id.* at 58-59. The 1972 Regulations contained no prescribed method for "translat[ing] the factors into a parole release date." *Id.* at 59 (citing *Phillips v. Fulwood,* 616 F.3d 577, 579 (D.C. Cir. 2010)). Thus, the Board "operated with nearly complete discretion." *Wilson v. Fullwood,* 772 F. Supp.2d 246, 252 (D.D.C. 2011); *see also Sellmon v. Reilly,* 551 F. Supp.2d 66, 86 n.15 (D.D.C. 2008) (recognizing that the Board enjoyed "almost unbridled discretion" in its parole decisions because the 1972 Regulations "offered no guidance as to how these factors should be weighted in the decision.").

In 1987, the Board replaced the 1972 Regulations with new regulations creating a system of points related to offender history, offense characteristics, and behavior while in prison. *See* D.C. Mun. Regs. tit. 28, § 204 *et. seq.* (1987) (repealed Aug. 5, 2000) ("the 1987 Regulations").

4

The resulting point total determined whether parole would be granted, *id.* § 204.19, although the Board could depart from the point calculation in "unusual circumstances," *id.* § 204.22.

On August 5, 1997, the Revitalization Act abolished the Board and tasked the Commission with responsibility for making parole determinations "pursuant to the parole laws and regulations of the District of Columbia." D.C. Code § 24-131(a). In 2000, the Commission drafted new parole regulations and guidelines ("the 2000 Guidelines") that it applied to any D.C. Code offender who received an initial parole hearing after August 5, 1998. *See* 28 C.F.R. § 2.80. The 2000 Guidelines established a different point-based system, which calculated a range of months beyond the time a prisoner is eligible for parole that must be served before he is regarded as suitable for parole. *See Daniel,* 766 F.3d at 59 (citing § 2.80(l)). The first step in this determination involves assigning points based on the prisoner's risk of recidivism, the presence of violence in his current or prior offenses, and whether the current offense involved the death of a victim or an otherwise high level of violence. *Id.* (citing § 2.80(c), (f)). The sum of these points, called the prisoner's "base point score," corresponds to a range of months to be served by the prisoner, called his "base guideline range." *Id.* (citing § 2.80(f), (h)). That range of months is added to the number of months until the prisoner's parole eligibility date, and adjusted upward for "significant disciplinary infractions" and downward for "superior program achievement." *Id.* (citing § 2.80(j)-(l)). This calculation at the initial parole hearing produces the prisoner's "total guideline range"—the range of time the prisoner must presumptively serve before he is considered suitable for parole. *Id.* (citing § 2.80(b), (l)). At subsequent reconsideration hearings, the Commission "[a]dd[s] together the ... Total Guideline Range from the previous hearing, and the ... guideline range for [any] disciplinary infractions since the previous hearing," and "[t]hen subtract[s] [any] award for superior program achievement." *Id.* at 60 (citing § 2.80(m)).

Although the Commission may "grant or deny parole to a prisoner notwithstanding the guidelines," it may do so only in "unusual circumstances." *Id.* (citing § 2.80(n)(1)).

In 2015, the Commission amended 28 C.F.R. § 2.80 to provide that the Commission must use the parole guidelines in the 1972 Regulations when reviewing parole applications filed by D.C. Code offenders who committed their offenses on or before March 3, 1985. *See* 80 Fed. Reg. 63115-01 (Oct. 19, 2015); 28 C.F.R. § 2.80(p). The Commission promulgated this new rule due to "developing case law that relates to parole guidelines and the Ex Post Facto Clause," and to be consistent with its decision to apply the parole guidelines in the 1987 Regulations to any D.C. Code offender who committed his offense between March 4, 1985 and August 4, 1998, *i.e.*, the *Sellmon* rule. *See* 80 Fed. Reg. 63115-01 (Oct. 19, 2015); 28 C.F.R. § 2.80(0). The new rule provides that "[a]mong others, the U.S. Parole Commission takes into account some of the following factors in making its determination as to parole:

> (i) The offense, noting the nature of the violation, mitigating or aggravating . . .
>
> (ii) Prior history of criminality, noting the nature and pattern of any prior offenses as they may relate to the current circumstances.
>
> (iii) Personal and social history of the offender, including such factors as his family situation, educational development, socialization, marital history, employment history, use of leisure time and prior military experiences, if any.
>
> (iv) Physical and emotional health and/or problems which may have played a role in the individual's socialization process, and efforts made to overcome any such problems.
>
> (v) Institutional experience, including information as to the offender's overall general adjustment, his ability to handle interpersonal relationships, his behavior responses, his planning for himself, setting meaningful goals in areas of academic schooling, vocational education or training, involvements in self-improvement activity and therapy and his utilization of available resources to overcome recognized problems. Achievements in accomplishing goals and efforts put forth in any involvements in established programs to overcome problems are carefully evaluated.

(vi) Community resources available to assist the offender with regard to his needs and problems, which will supplement treatment and training programs begun in the institution, and be available to assist the offender to further serve in his efforts to reintegrate himself back into the community and within his family unit as a productive useful individual.

28 C.F.R. §2.80(p)(4).

## IV. APPLICANT'S PAROLE HEARINGS

The Commission conducted Applicant's initial parole hearing on July 21, 2010. (*See* ECF No. 28-3 at 1). The Commission applied the 2000 Guidelines and calculated Applicant's total guideline range as 376-420 months, which represents the total range of time he must presumptively serve before being considered suitable for parole. (*Id.* at 1, 5). This calculation included 36-74 months assessed for institutional misconduct that included a sexual assault, extortion/blackmail, and sexual proposal/threat to female prison staff members. (*Id.* at 3-5). In the hearing summary, the examiner noted that Applicant had a history of sexual violence, refused to accept responsibility for his sexual offenses, and had not participated in sex offender counseling or treatment programs. (*Id.* at 6). On August 16, 2010, the Commission issued its Notice of Action denying parole, declining to depart downward from Applicant's total guideline range, and continuing the matter for reconsideration in three years. (ECF No. 28-4 at 1).

On October 29, 2013, Applicant appeared at his second parole suitability hearing. (ECF No. 28-5 at 1). Applicant's total guideline range remained 376-420 months under the 2000 Guidelines. (*Id.* at 6). In the hearing assessment, the examiner noted that Applicant "was advised that he is viewed as an untreated sex offender; therefore, it was recommended that he seek to participate in Sex Offender; Substance Abuse Treatment and Victim Impact programs." (*Id.* at 2). On November 22, 2013, the Commission issued its Notice of Action denying parole,

explaining that a departure from the guideline range was not warranted, and continuing the matter for reconsideration in three years. (*See* ECF No. 28-6)

The Commission held Applicant's third parole suitability hearing on January 29, 2016. (*See* ECF No. 28-8). The Commission applied the parole guidelines in the 1972 Regulations in accordance with the recently amended 28 C.F.R. § 2.80(p). (*Id.*). In the hearing assessment, the examiner stated that his main area of concern was that Applicant "remains an untreated sex offender." (*Id.* at 6). He noted that Applicant "fully admitted to his sex offenses and, thus, appears to be a good candidate to complete sex offender treatment programming (SOTP)." (*Id.*). The hearing examiner recommended that Applicant participate in SOTP, and that "if the BOP cannot move him to a facility offering an SOTP, he should speak with Dr. Moody about the possibility she could custom tailor a program for him at the ADX to address his sex crimes and the accompanying risk of re-offense." (*Id.*). The hearing examiner also explained that "if treatment providers determine that you are not suitable for residential sex offender treatment at this time, it is recommended that you participate in other programs, as determined by the Bureau of Prisons, that address your risk of re-offense." (*Id.* at 7). Finally, the hearing examiner advised Applicant to complete drug and alcohol programming as well. (*Id.*).

On February 19, 2016, the Commission issued its Notice of Action denying parole and continuing the matter for reconsideration in February 2019. (ECF No. 28-9). The Commission provided the following reasons for its decision to deny parole:

> [Y]ou are a more serious risk because the Commission finds you require additional meaningful programming that addresses the underlying causes of your criminal behavior and your risk of re-offense. The Commission finds you remain an untreated sex offender. Furthermore, you have not completed any drug and alcohol treatment classes despite your admission that you were using drugs and alcohol at the time you committed your instant offenses of conviction.

> It is recommended you complete drug and alcohol treatment classes before your next hearing.
>
> Additionally, the Commission is recommending that you promptly volunteer for and participate in a residential sex offender treatment program within the Bureau of Prisons. If treatment providers determine that you are not suitable for the residential sex offender treatment at this time, it is recommended that you participate in other programs, as determined by the Bureau of Prisons, that address your risk of re-offense. *The Commission will consider your participation in such a program at your next rehearing and evaluate whether you are a lesser risk to continue the type of criminal behavior that has led to your current period of incarceration.*
>
> The Commission will consider your participation in the programming recommended above at your next rehearing and evaluate whether you are a lesser risk to continue the type of criminal behavior that has led to your current period of incarceration. The Commission also finds your continued incarceration beyond the ordinary 12-month rehearing is necessary to allow sufficient time for you to complete these critical programming goals.

*Id.* (emphasis in original).

## V. MERITS OF APPLICANT'S CLAIMS

### A. Program Achievement Credit

Applicant first claims that the Commission incorrectly applied the 2000 Guidelines at his 2010 and 2013 parole proceedings by failing to deduct any points for program achievements. Respondents argue that this claim fails because the Commission properly exercised its discretion in determining whether to rely on program achievements as a basis for recommending parole.

Under the 2000 Guidelines, if the Commission finds that an offender has demonstrated "superior program achievement," it may deduct "one-third of the number of months during which the prisoner demonstrated superior program achievement" from his guideline range. 28 C.F.R. § 2.80(e)(1), (k). Whether an offender has demonstrated "superior program achievement" is the subjective determination of the hearing examiner and Commission. *Sellmon,* 551 F.

Supp.2d at 88. The decision whether to award credit also is discretionary. *Crutchfield v. U.S. Parole Comm'n,* 438 F. Supp.2d 472, 478 (S.D.N.Y. 2006).

At Applicant's 2010 parole hearing, the examiner noted that Applicant had completed his GED in 1991 while in state custody, and also completed additional educational, vocational, and step-down programs in the BOP. (ECF No. 28-3 at 5). The hearing examiner did not award superior program achievement credit. (*Id.*). At the reconsideration hearing in 2013, the examiner found that Applicant "has not participated in any additional programs" since his 2010 parole hearing. (ECF No. 28-5 at 5).

The Court finds the record reflects that the Commission acknowledged and assessed Applicant's program achievements while incarcerated, but nonetheless exercised its discretion in deciding that Applicant should not be granted credit for superior program achievement under the 2000 Guidelines. Applicant has not shown that this decision was arbitrary and capricious. *Dye,* 558 F.2d at 1378. Therefore, the Court concludes that the Commission did not abuse its discretion in failing to award Applicant superior program achievement credit at his 2010 and 2013 parole proceedings.

To the extent Applicant is asserting that the Commission improperly applied the 2000 Guidelines at his 2010 and 2013 proceedings in violation of the Ex Post Facto Clause, this argument is moot at this juncture because the Commission conducted a new parole suitability hearing on January 29, 2016, and applied the parole guidelines in the 1972 Regulations. *See e.g., Hunter v. Reilly,* 405 F. App'x 514, 515 (D.C. Cir. 2011) (unpublished) (holding that the district court properly dismissed the case as moot where the Commission conducted a new parole hearing applying the controlling guidelines); *see also Taylor v, Reilly,* 685 F.3d 1110, 1112 (D.C. Cir. 2012) (noting plaintiff did not contest that his claim for injunctive and declaratory relief

under the Ex Post Facto Clause became moot when the Commission agreed to grant him a new parole hearing and apply the parole guidelines in the 1987 Regulations); *Hunter v. U.S. Parole Comm'n,* 406 F. App'x 879 (5th Cir. 2010) (unpublished) (holding that prisoner's receipt of July 2009 parole hearing applying old guidelines moots his Ex Post Facto claim based on his 2005 and 2008 hearings).

In addition, in making a parole decision under 28 C.F.R. § 2.80(p), the Commission considers numerous factors, including the prisoner's institutional involvement in academic, vocational, and therapeutic programs. *See id.* § 2.80(p)(4)(v); *see also Daniel,* 766 F.3d at 58-59. Thus, the decision to consider and weigh program achievement is solely within the discretion of the Commission under the parole guidelines in the 1972 Regulations and the 2000 Guidelines. *See Sellmon,* 551 F. Supp.2d at 86 n.15, 88 (stating that the 1972 Regulations "offered no guidance as to how factors should be weighted in [a] decision," and "superior program achievement" under the 2000 Guidelines was "determined subjectively by the Hearing Examiners and Commissioners"); *see also Otsuki v. U.S. Parole Comm'n,* 777 F.2d 585, 587 (10th Cir. 1985) (holding that under regulations concerning superior program achievement, the Commission may decline to advance parole date because of seriousness of inmate's offense). As explained above, Applicant has not demonstrated that the Commission abused its discretion in evaluating Applicant's program achievements during his parole proceedings. Accordingly, the Court rejects Applicant's arguments in his first claim.

### C. Sex Offender Treatment

Applicant next claims that the Commission erred in denying parole in 2016 based on Applicant's failure to participate in a sex offender treatment program that was not recommended at earlier parole proceedings. Applicant also alleges that this type of program is unavailable at

11

the prison where he is incarcerated. Applicant finally asserts that sex offender treatment was not a precondition for parole under the 1972 Regulations. Respondents argue that Applicant was advised to undergo sex offender programming, yet failed to make a good faith attempt to participate in any rehabilitative program; Applicant has failed to demonstrate that such programming was not available to him; and the Commission has discretion to set requirements for parole, including sex offender treatment that demonstrates a lessened risk to the community.

A review of the record indicates that Applicant was advised to participate in sex offender treatment and other rehabilitative programming prior to his 2016 parole hearing. At the 2013 hearing, the examiner "advised" Applicant that she viewed him "as an untreated sex offender," and recommended "Sex Offender, Substance Abuse and Victim Impact programs." (ECF No. 28-5 at 2). Similarly, the examiner noted in his summary of the 2010 parole hearing that "the subject will need to have some participation in either the Sex Offender Management Program (SOMPT) and/or the Bureau of Prisons Sex Offender Treatment Program (SOTP) prior to his release to the community." (ECF No. 28-3 at 6). Thus, Applicant's position that he was not aware of the need to participate in sex offender treatment is unavailing.

Applicant's second argument—that the Commission's decision to deny parole was arbitrary and capricious because it was predicated upon Applicant's failure to utilize programming that was not available to him at the facility where he has been incarcerated—also is without merit. The Commission informed Applicant that he should participate in sex offender treatment, programming, or counseling to address the underlying causes of his criminal behavior. (*See* ECF No. 28-3 at 6; ECF No. 28-5 at 2; ECF No. 28-8 at 6-7). Applicant has not demonstrated that some form of programming or therapy addressing his sex offenses was not available to him the United States Penitentiary in Florence, Colorado.

Moreover, the BOP must balance numerous factors for determining an inmate's place of imprisonment, including the facility's resources, the nature and circumstances of the inmate's offenses, and the inmate's personal history and characteristics. 18 U.S.C. §3621(b). While Applicant currently may not be placed in a federal prison offering a sex offender treatment program, the BOP is not obligated to prioritize his facility designation to ensure such availability, and the Commission may reasonably consider the lack of sex offender treatment in its decision to deny parole. As one court aptly explained:

> The fact that a sex offender treatment program was unavailable at USP–Lewisburg does not preclude the Parole Commission from taking into consideration the fact that Petitioner had not completed such a program. The Parole Commission has neither the authority nor the obligation to assure that programs designed to improve the prospect of successful rehabilitation, and consequently safeguard the community, are provided by corrections authorities. It is the Parole Commission's responsibility to assess the risk posed by a parole applicant, and completion of an appropriate treatment program is rationally related to the assessment of that risk, regardless of the availability of appropriate programming where the inmate is housed. In this case, the Parole Commission was careful to note that its decision was based upon the undisputed fact that Petitioner had not participated in "Sex Offender Treatment or Counseling Program." The Parole Commission did not state that it was denying parole because Petitioner refused to participate in such programming. It ascribed no fault to Petitioner in this regard. But the undeniable fact that such treatment was not received by Petitioner afforded the Parole Commission a rational basis for concluding that he posed an unacceptable risk to the community.

*Turnage v. Bledsoe*, No. 08-CV-1662, 2010 WL 3632699, at *7 (M.D. Penn. Sept. 9, 2010) (unpublished); *see also Greenwood v. English*, No. 13-cv-193-RS-EMT, 2013 WL 6085131, at *2, 4 (N.D. Fla. Nov. 19, 2013) (unpublished) (rejecting habeas petition challenging denial of parole based on failure to complete sex offender treatment program notwithstanding claim that BOP's refusal to transfer inmate to institution offering such programming until Commission established presumptive parole date placed prisoner in "Catch-22"); *Johnson v. Rios,* 10-cv-01164-SMS (HC), 2011 WL 13143678, at *4 (E.D. Ca. Mar. 29, 2011) (unpublished) (denying

habeas claim challenging Commission's parole decision based on BOP's failure to provide access to sex offender treatment program where prisoner elected not to participate in one-on-one counseling to address sex offender issues).

The Court finds that the Commission's conclusion that Applicant was not suitable for parole and required "additional meaningful programming that addresses the underlying causes of [his] criminal behavior and [his] risk of re-offense," including some type of sex offender treatment, was not irrational or unreasonable. (ECF No. 28-9). The Commission determined that Applicant posed a serious risk of reoffending if released on parole based on the seriousness of his sex offenses, his institutional disciplinary infractions involving sexual misconduct, and his failure to participate in sex offender and drug and alcohol treatment to assist him in becoming suitable for parole. (*Id.*; ECF No. 28-8). The Court concludes, therefore, that the Commission's decision to deny parole in 2016 satisfies the highly deferential standard of review accorded to parole determinations.

Finally, although the 1972 Regulations did not expressly mandate sex offender treatment for release on parole, nothing in the parole regulations limits the Commission's authority to consider Applicant's risk of reoffending, including completion of programming and therapy to overcome "recognized problems." *See* 28 C.F.R. § 2.80(p)(4) (factors include institutional experience such as involvement in self-improvement activities and therapy, utilization of available resources to overcome recognized problems, and achievements in established programs). Moreover, sex offender treatment programs, "represent[] a sensible approach to reducing the serious danger that repeat sex offenders pose," *McKune v. Lile,* 536 U.S. 24, 48 (2002), and therefore, it is appropriate to consider whether an inmate has completed such a program as indicative of his rehabilitation. *See Turnage,* 2010 WL 3632699, at *6 ("[F]ailure to

14

complete a sex offender program is one of the many factors parole authorities may take into consideration in refusing to release an inmate, as successful completion of such a program bears rationally on an inmate's likely rehabilitation."). For these reasons, the Court rejects Applicant's arguments concerning the Commission's consideration of sex offender treatment in connection with its parole decision.

### D. 18 U.S.C. § 4042

Applicant also insists that the Commission erroneously relied on 18 U.S.C. § 4042 because it is inapplicable to non-federal offenders. Section 4042 outlines the duties of the BOP, including providing notice of a sex offender's release to the community. 18 U.S.C. § 4042(c). The Commission never referenced or considered § 4042 in any of Applicant's parole proceedings or its decision to deny parole. Thus, Applicant's claim that 18 U.S.C. § 4042 does not apply to him as a D.C. Code offender does not warrant habeas relief.

### E. Administrative Appeal

Applicant argues throughout the Application that he was wrongfully denied the right to administratively appeal the Commission's decisions denying him parole in 2010, 2013, and 2016. Applicant does not cite any legal authority for his position.

There is no constitutional right to appeal a parole decision. *See Garcia v. Neagle,* 660 F.2d 983, 988 (4th Cir. 1981) ("In unmistakable terms, the Parole Act specifically commits the decision to grant or deny parole to the unreviewable discretion of the Parole Commission"); *Ortwein v. Schwab,* 410 U.S. 656, 660 (1973) ("This Court has long recognized that, even in criminal cases, due process does not require a State to provide an appellate system.")*; see also Ellis v. District of Columbia,* 84 F.3d 1413, 1415-20 (D.C. Cir. 1996) (holding that neither the Constitution nor D.C. parole regulations create a liberty interest in parole). Moreover, the D.C.

parole regulations in effect at the time of Applicant's offenses did not include the right to appeal the Board's denial of parole. *See* D.C. Code §§ 24-401, *et. seq.; see also* 69 Fed. Reg. 68791 (Nov. 26, 2004) ("The Board did not provide for an appeal of any of its decisions"). Finally, the Commission's new rule concerning the 1972 Regulations provides that "[d]ecisions resulting from hearings under this section may not be appealed to the U.S. Parole Commission." 28 C.F.R. § 2.80(p)(8). Because Applicant has not demonstrated that he was improperly denied the right to administratively appeal the Commission's parole decisions, the Court rejects this claim.

## VI. CONCLUSION

Based on the foregoing, Applicant's claims challenging the Commission's decisions to deny him parole in 2010, 2013, and 2016 do not warrant relief in this action. Accordingly, it is

ORDERED that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (ECF No. 1), filed *pro se* by Applicant, Clinton T. Eldridge, is DENIED and this case is DISMISSED with prejudice. It is

FURTHER ORDERED that Applicant's "Request the Court to Grant Permission to Supplement the Record" (ECF No. 30), "Motion for Leave to File a Clarification on the Issue of 'Sex Offender Treatment Program'" (ECF No. 39), and "Motion to Supplement the Record" (ECF No. 44) are GRANTED; the Court carefully reviewed these documents in considering Applicant's claims for relief. It is

FURTHER ORDERED that any other pending motions are DENIED as moot. It is

FURTHER ORDERED that no certificate of appealability will issue because Applicant has not made a substantial showing of the denial of a constitutional right. *See Eldridge v. Berkebile,* 791 F.3d 1239 (10th Cir. 2015). It is

FURTHER ORDERED that leave to proceed *in forma pauperis* on appeal is denied for the purpose of appeal. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438 (1962). If Applicant files a notice of appeal he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.

Dated this 29th day of July, 2017.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge